```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS


_____
                              )
LIFE IMAGE, INC.,             )
                              )
            Plaintiff,        )
                              )
v.                            )    Civil Action
                              )    No. 17-11566-PBS
CARRIE L. SHOCKMAN,           )
                              )
            Defendant.        )
_____)
```

**MEMORANDUM AND ORDER**

September 27, 2017

Saris, C.J.

**INTRODUCTION**

Plaintiff Life Image, Inc. ("Life Image") seeks to enjoin its former employee, defendant Carrie Shockman, from working for Nuance Communications, Inc. ("Nuance"), its competitor. Life Image argues that Ms. Shockman is in violation of the non-compete, non-solicitation, and confidentiality provisions of her employment contract. After a hearing, Judge Talwani, as emergency judge, denied Life Image's motion for a temporary restraining order on August 24, 2017. After further briefing and an evidentiary hearing at which Ms. Shockman testified credibly, the Court **DENIES** Life Image's motion (Docket No. 6).

1

**FACTS**

The Court finds the following facts are likely true based on the admissible evidence in the record, including the verified complaint.

Ms. Shockman worked for Life Image for seven years, most recently as Regional Vice President of Sales, until she resigned and joined Nuance in July 2017. Life Image is a medical imaging technology company that sells software solutions for hospital systems to allow them to transfer medical images with ease. Nuance competes with Life Image. While she worked at Life Image, Ms. Shockman wrote entries in Life Image's customer relations database describing Nuance as Life Image's primary competitor for new business with potential clients. Nuance and Life Image compete directly to sell medical image sharing software to hospital systems and other medical practices. Life Image's image sharing product is called "Image Exchange." Nuance's image sharing product is called "PowerShare."

As a condition of her employment with Life Image, Ms. Shockman signed a Confidentiality, Developments, and Non-Competition agreement (the "Agreement"). Specifically, Ms. Shockman is subject to a clause titled, "Non-Competition," which states:

> While I am employed by or acting as a
> consultant to the Company, and for a period
> of twelve (12) months following the date of

>>>>termination of my employment or consulting
relationship with the Company (which period
will automatically be extended by a period
of time equal to any period in which I am in
breach of any obligation under Section 3;
including any such extension, the
"Restricted Period"), I will not engage,
directly or indirectly, as a[n]...employee,
consultant, or representative, or in any
other capacity, in any business presently
engaged in by the Company or in which the
Company may engage at any time during the
period of my employment or consulting
relationship with the Company.

Docket No. 1-1 at 34 (Agreement ¶ 3(a) (first)). Ms. Shockman covenanted to not solicit her coworkers or customers during the aforementioned "Restricted Period." Id. (Agreement ¶ 3(a) (second)–(b)). Finally, Ms. Shockman promised to not disclose and promptly return all Confidential Information in her possession as a result of her employment with Life Image. Id. at 32–33 (Agreement ¶ 1).

Nuance recently acquired another company, Primordial Designs, and is now selling two Primordial products, "Workflow Orchestration" and "Lung Cancer Screening," as part of its "PowerScribe 360" product line. Nuance hired Ms. Shockman to sell these two products, which are now sold under the PowerScribe brand. Docket No. 43 at 32–33 (Prelim. Inj. Hrg. Transcript).

Nuance marketing materials encourage potential customers to bundle PowerShare, the image sharing software which competes

directly with Life Image software, with PowerScribe Reporting, a dictation tool. Ms. Shockman is not selling PowerScribe Reporting. There is no record evidence that Nuance is marketing "PowerScribe 360 Workflow Orchestration" as a bundle with PowerShare. However, there is a brochure for "PowerScribe 360 Lung Cancer Screening" which discusses "leveraging" the tool with PowerScribe 360 Reporting and "Nuance's PowerShare Network." See Docket No. 37, Ex. 8. Ms. Shockman testified that if a potential customer for "Workflow Orchestration" or "Lung Cancer Screening" asked her about PowerShare she would recuse herself and refer the customer to a different Nuance salesperson. Docket No. 43 at 44-45. Ms. Shockman further testified that no one has "raised" PowerShare in conversations with her so far in the six weeks of her employment, although she has spent little of that time engaged in sales. Id. at 45.

Ms. Shockman has not solicited former coworkers from Life Image to join her at Nuance, nor has she solicited any of her former customers at Life Image. Furthermore, Ms. Shockman did not retain any of Life Image's data or other proprietary information when she resigned. Id. at 55-56.

## DISCUSSION

In order to determine whether a preliminary injunction should issue, the Court must weigh (1) the likelihood of success on the merits; (2) the potential for irreparable harm to the

4

plaintiff if the injunction is denied; (3) the balance of the hardship to defendant if enjoined as contrasted with the hardship to plaintiff if no injunction issues; and (4) the effect of the court's ruling on the public interest. See Wine & Spirits Retailers, Inc. v. Rhode Island, 418 F.3d 36, 46 (1st Cir. 2005). "The sine qua non of this four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002).

Life Image has not met its burden of showing likelihood of success on the merits. At the hearing on the motion, Life Image focused on an argument that Ms. Shockman was violating the Agreement because her sales of "Workflow Orchestration" and "Lung Cancer Screening" would indirectly lead to sales of PowerShare, the product which directly competes with Life Image's Image Exchange. The argument is premised on Nuance's own marketing materials which suggest certain of the products should be "bundled" together.

It is true that the Non-Competition provision of the Agreement purports to prohibit Ms. Shockman from engaging in an activity that "indirectly" competes with Life Image's business. Life Image has not shown a likelihood that by selling "Workflow

5

Orchestration" and "Lung Cancer Screening" for Nuance, Ms. Shockman is indirectly competing with Life Image's business by actually promoting sales of Nuance's competing image sharing software, PowerShare. Importantly, the marketing materials Life Image submitted to the Court do not cross-market "Workflow Orchestration" with the PowerShare image sharing software. There is, however, a marketing brochure that discusses "leveraging" the "Lung Cancer Screening" tool with PowerScribe 360 Reporting and PowerShare. This brochure provides some evidence for the potential of indirect engagement in competition. However, in light of Ms. Shockman's testimony that she would recuse herself if a customer asked about PowerShare, and the fact that Ms. Shockman's compensation is not tied to PowerShare sales, Life Image has not met its burden of showing a likelihood of success that Ms. Shockman is violating the non-compete clause, and the Court found her fully credible in her statement that she intended to honor the Agreement.

Although the point was not heavily pressed at the hearing, Life Image also argues that "Workflow Orchestration" and "Lung Cancer Screening" directly compete with Life Image products. The Court has not had the benefit of seeing any product sold by Life Image or Nuance in action. However, based on the affidavits and exhibits in the record, as well as Ms. Shockman's testimony, I conclude that Life Image has not shown a likelihood of success

6

on the merits of its direct competition claim. To meet its customers' needs, upon request, Life Image says it customizes its Image Exchange software to achieve the same functionality as "Workflow Orchestration." Docket No. 37, Michela Decl. ¶¶ 5-8. Nuance disputes that Life Image's customizations overlap with "Workflow Orchestration" functionalities. Nuance's "Workflow Orchestration" contains "workflow/work list" functions that make a radiologist more efficient in the assignment of tasks for timely processing images in its system. <u>See</u> Shockman Supp. Decl., Docket No. 50 ¶¶ 9-13; Docket No. 43 at 49-52. Ms. Shockman testified that Life Image's workflow functionality is directed to increasing efficiency in "tasks around image sharing." Docket No. 43 at 52. Conversely, Ms. Shockman testified that Nuance's "Workflow Orchestration" is not designed to enhance efficiency in image sharing. <u>Id.</u> at 51. It is unclear to me on this record to what extent, if any, Life Image's "workflow" functionality overlaps with Nuance's "Workflow Orchestration."

There is no direct evidence that Ms. Shockman is soliciting or otherwise contacting former customers or coworkers from her time at Life Image. There is also no evidence that Ms. Shockman kept or shared any proprietary information to which she was privy during her Life Image tenure.

As Life Image has failed to show a likelihood of success on the merits, the Court need not analyze the remaining three prongs of the preliminary injunction standard.

### ORDER

For the foregoing reasons, the Court **DENIES** Life Image's motion for a preliminary injunction (Docket No. 6). The parties shall file a proposed scheduling order by October 3, 2017.

/s/ PATTI B. SARIS
Patti B. Saris
Chief United States District Judge